Hester CROKER, Appellant,

and

John H. Croker, Respondent,

v.

CONSOLIDATED SERVICE CAR COMPANY, Inc., and Josephine E. Hamilton, Appellants.

No. 49003.

Supreme Court of Missouri, Division No. 2.

Feb. 11, 1963.

Rehearing Denied March 11, 1963.

Wilson·Gray, St. Louis, for Hestor Croker and John H. Croker.

Charles F. Hamilton, F. Douglas O'Leary and Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for Josephine E. Hamilton.

John T. Murphy, Jr., Murphy & Roche, St. Louis, for Consolidated Service Car Co., Inc.

STORCKMAN, Judge.

The appeals in this case, three in number, are from a decree in a consolidated suit in equity seeking to determine the validity of an attempted settlement of the separate claims of a woman and her husband growing out of personal injuries received by the wife when she was struck by one automobile and carried by it into·collision with another. In her equity action the wife, Hester Croker, sought to set aside a judgment for $17,000 rendered against Consolidated Service Car Company, Inc., pursuant to a stipulation in her personal injury suit for $100,000 and to have the case reinstated on the trial docket. The decree denied her the relief requested and she has appealed. Separate answers and counterclaims sounding in equity were filed by the defendants, Consolidated Service Car Company, Inc., and Mrs. Josephine E. Hamilton, in a civil action for expenses and loss of services brought by the husband, John H. Croker. These equitable issues sought to validate the agreement by which Consolidated, in addition to satisfying the judgment, was to pay $500 to the husband for his release, and the defendant Hamilton was to pay $2500 jointly to Mr. and Mrs. Croker for their covenant not to sue. These issues were consolidated for trial with Mrs. Croker's equity suit. Except for approving the compromise judgment, the relief requested by the defendants Consolidated and Hamilton was denied and they

have appealed. In general the questions presented on appeal is whether the trial court erred in denying the relief requested by the various appellants.

On June 9, 1958, Mrs. Croker while crossing Locust Street from south to north on the east side of Seventh Street in downtown St. Louis was struck by a westbound automobile alleged to have been operated by an agent of the defendant Consolidated Company. Mrs. Croker was thrown partially onto the hood of the automobile and carried in this fashion until it collided with another automobile northbound on North Seventh Street operated by the defendant Josephine E. Hamilton. Mrs. Croker received serious injuries, particularly to her lower legs.

Mr. and Mrs. Croker, aged 70 and 53 respectively, operated a cleaning and pressing establishment at 3100 Laclede Avenue in St. Louis. On the morning of June 10, 1958, Oliver R. Farrell, a lawyer with offices in the City of St. Louis, at the suggestion and in the company of Reverend Columbus Williams, a client of Mr. Farrell and a brother-in-law of Mrs. Croker, went to the place of business. Mr. Farrell testified that he advised Mr. Croker that both he and his wife had claims for damages as a result of the accident and that Mr. Croker said he had no lawyer and requested that Mr. Farrell represent him and his wife and "take care of their cases." From there Mr. Farrell, still accompanied by Rev. Williams, went to the hospital, talked to Mrs. Croker who signed a contract authorizing Mr. Farrell to represent her in the prosecution of her claim for damages on a contingent fee basis of one-third of the amount recovered.

On October 21, 1958, Mr. Farrell filed a damage suit on behalf of Mrs. Croker, No. 14259–E, in the Circuit Court of the City of St. Louis against Consolidated Service Car Company, Inc., and Josephine E. Hamilton. Thereafter and before the depositions were taken in February 1959, Mr. Farrell brought into the case as additional

counsel Mr. Cleo V. Barnhart, a St. Louis lawyer having a wide experience in the personal injury field. On December 7, 1959, which was the second trial setting, the case was assigned for trial to Division 18 of the Circuit Court, presided over by Judge Robert L. Aronson. Before the trial began, settlement talks were had with the result that a judgment was entered in favor of Mrs. Croker against Consolidated in the sum of $17,000, payable $5,000 within fifteen days, and the balance in monthly installments of $300 each. The suit was dismissed as to the defendant Hamilton without prejudice. It is further asserted by the defendants Consolidated and Hamilton, and denied by Mr. and Mrs. Croker, that a valid settlement agreement was made whereby the defendant Hamilton was to pay the sum of $2500 to Mr. and Mrs. Croker and receive from them a covenant not to sue and the defendant Consolidated was to pay the further sum of $500 to Mr. Croker upon the execution and delivery of a release covering his claim growing out of the injuries to his wife.

After the judgment was entered in Division 18, but before the settlement was completed, Mrs. Croker demanded more money, and when advised that no more could be obtained she undertook to discharge Mr. Farrell and Mr. Barnhart. She and Mr. Croker refused to complete the alleged settlement of their claims and to accept the consideration therefor.

Thereafter, Mr. and Mrs. Croker engaged their present counsel and instituted additional litigation. Mr. Croker filed suit against Consolidated Service Car Company, Inc., and Josephine E. Hamilton seeking damages in the sum of $11,500 for loss of his wife's services and his expenses. In bar of this action, the defendants, inter alia, pleaded the settlement agreement. These issues were consolidated with the equity suit filed by Mrs. Croker against Consolidated and Mrs. Hamilton in which the plaintiff prayed that the court "set aside and annul said compromised judgment, stipulation and settlement," and reinstate her

damage suit No. 14259–E on the trial docket. The consolidated equity case was tried before the court without a jury and a decree was rendered denying at least portions of the relief sought by each of the appellants—Mrs. Croker, Consolidated Service Car Company, Inc., and Mrs. Josephine E. Hamilton. The evidence will be further developed in connection with the questions presented.

The first point of Mrs. Croker's appeal is that the trial court erred in dismissing her petition to set aside the judgment in Cause No. 14259–E and in ordering her to specifically perform the judgment because the settlement was not authorized by her nor consented to or ratified by her. It is admitted that Mrs. Croker employed Mr. Farrell to represent her and that he filed suit for her on October 21, 1958, seeking damages in the sum of $100,000. For reasons more fully developed later, Mr. Farrell associated Mr. Barnhart with him. Mr. Barnhart was to be compensated out of Mr. Farrell's contingent fee without additional cost to the Crokers. This fact was made known to and acquiesced in by Mrs. Croker. Mr. Barnhart appeared with Mr. Farrell at the taking of the depositions in February 1959 and thereafter participated in the preparation of the case for trial. Unfortunately, Mr. Barnhart died before the trial of this consolidated case; hence we do not have the benefit of his testimony.

On Saturday, December 5, Mr. Farrell picked up Mr. and Mrs. Croker and took them to Mr. Barnhart's office for a conference in final preparation for the trial of the case on the following Monday, December 7, 1959. In some respects the testimony as to what occurred at this conference is conflicting. Mr. Farrell testified that the conference lasted about four and one-half hours, while the Crokers contended it lasted only fifteen or twenty minutes. Mr. Farrell testified that in addition to making final preparation for trial the possibility of settlement was discussed. Mr. John T. Murphy, Jr., representing Consolidated, called during the late afternoon while the Crokers

were present and talked to Mr. Barnhart. Until then Consolidated had not indicated an ability or willingness to pay anything in excess of $5000 in settlement which was not acceptable to Mrs. Croker or her attorneys. Consolidated carried a policy of liability insurance which covered the company but not the driver in the sum of $5000. Up to that time the only settlement figure Mrs. Croker's attorneys had communicated to Consolidated was $50,000. The defendant Hamilton had denied liability and refused to pay anything in settlement. Mr. Murphy asked Mr. Barnhart to give him a "realistic" settlement figure and was told by Mr. Barnhart that the Crokers were in his office, that he would talk to them and give Mr. Murphy a "confirmed settlement figure" on Monday morning.

Although Mr. Croker was, as he testified, of the Negro race, his skin was very light-colored. Being disturbed that this circumstance might distract the attention of the jury from the merits of Mrs. Croker's case and the seriousness of her injuries, Mr. Farrell and Mr. Barnhart suggested that Mr. Croker be not present at the trial. To this Mr. Croker agreed saying that this condition had caused misunderstandings in connection with his business. Mr. Farrell testified that Mr. Croker then told him and Mr. Barnhart that if an offer was made before or during trial they were authorized to settle his claim as well as his wife's for any sum approved by Mrs. Croker.

When the attorneys reported in Division 18 for trial pursuant to assignment, an inquiry by Judge Aronson precipitated a further discussion of settlement among the attorneys—Mr. Farrell and Mr. Barnhart purporting to represent the Crokers, Mr. John T. Murphy, Jr., representing Consolidated Service Car Company, Inc., and Mr. Charles F. Hamilton representing (but not related to) Mrs. Josephine E. Hamilton. Mrs. Croker was in the courtroom during this entire period. After considerable negotiation, Consolidated offered a total of $17,500 and the defendant Hamilton $2500. In her testimony Mrs. Croker remembered that

Mr. Farrell asked Judge Aronson if he felt this was a fair settlement and the judge said, "Leave it to the client." Mr. Farrell and Mr. Barnhart talked to Mrs. Croker and recommended settlement on that figure and Mrs. Croker agreed. Since the members of the jury panel had been brought into the courtroom, the parties were invited by Judge Aronson to come into his chambers. The court reporter was called and a memorandum of the settlement was dictated. On that day the plaintiff dismissed her cause of action against the defendant Josephine E. Hamilton without prejudice and the cause was passed for settlement as to the remaining defendant. On the following day pursuant to a stipulation signed by the attorneys a judgment was entered in favor of Mrs. Croker and against Consolidated for $17,000 and costs. Execution was stayed upon the condition that the defendant pay $5,000 within fifteen days and the remainder of $12,000 in monthly installments of $300 beginning on January 15, 1960. On default of any payment execution was to issue.

A typewritten transcript of the memorandum of settlement was introduced in evidence as defendant Consolidated's exhibit No. 6. The court reporter also read from his notes the proceedings taken in the presence of Judge Aronson, Mrs. Croker, and the various attorneys. Since this record embodies all the terms of the settlement, it will be set out in full. The portion in brackets in the second paragraph was supplied by the court reporter's notes. The complete transaction as recorded by the court reporter is as follows:

"MR. BARNHART: If the Court please, here in chambers, at the beginning of this trial, on behalf of the plaintiff I would like to inform the Court that we have arrived at a possible method of disposing of this case by settlement, which is as follows:

"Attorney Charles F. Hamilton, representing the defendant, Mrs. Josephine E. Hamilton, has made an offer of

$2500 to pay [to plaintiff and] her husband in consideration of their executing a covenant not to sue Josephine E. Hamilton in the future nor to further prosecute this lawsuit against her seeking damages arising out of the accident which is the subject of this lawsuit.

"Mr. John T. Murphy, representing the Consolidated Service Car Company, has agreed that on behalf of his client that he will pay John H. Croker, the husband of the plaintiff, the sum of $500 within the next ten days upon condition that John H. Croker execute a full release of his cause of action arising out of the automobile accident which is the subject of this lawsuit.

"And that the Consolidated Service Car Company will agree now to execute a stipulation to be filed in this cause, the terms of which will be as follows:

"That judgment will be entered in favor of the plaintiff and against the defendant Consolidated Service Car Company in the total sum of $17,000 and costs, and that execution thereon will be stayed upon the following conditions, to-wit:

"That the Consolidated Service Car Company pay to plaintiff, Hester Croker, the sum of $5,000 within fifteen days hereafter, and that they pay the balance of $12,000 in monthly installments of $300 each for forty consecutive months, the first payment to be made on the 15th day of January, 1960, and each payment being—additional payment of $300 being made on the 15th day of each month thereafter until a total of forty payments has been made; and that upon default of any one of such payments for a period of fifteen days that execution shall issue immediately.

"Mr. Hamilton, that is your understanding of how we are to dispose of this matter, is that correct?

"MR. HAMILTON: I didn't hear this first portion of this, but it is my understanding that this lawsuit will be dismissed by plaintiff with prejudice, or without prejudice?

"MR. BARNHART: Yes; and then we will then enter a covenant not to sue signed by plaintiff and her husband for the amount of $2,500.

"MR. HAMILTON: That is right.

"MR. BARNHART: Mr. Murphy, you have heard me dictate the full understanding into the record?

"MR. MURPHY: Yes.

"MR. BARNHART: Within the usual period of time Consolidated will pay $500 for the husband's release only.

"MR. MURPHY: What period of time?

"MR. BARNHART: Within the usual period of time, and there will be entered as of today a judgment against this company for $17,000, $5,000 of that to be paid within fifteen days of today, and the balance to be paid at the rate of $300 each month until it is all paid, the first of those payments to be made January 15, 1960, and the succeeding payments on the 15th day of each month thereafter and upon any such payments becoming delinquent for a period of fifteen days that execution shall issue immediately.

"MR. MURPHY: That is correct.

"MR. BARNHART: Now, Mrs. Croker, do you understand the manner in which this is being settled?

"MRS. CROKER: I think I do.

"MR. BARNHART: In other words, to explain it further to you, you and your husband together, within the next fifteen days will be paid the sum of $8,000 in cash money. Then you have $12,000 more coming, but that will be paid to you $300 a month beginning on January 15, 1960 and continuing for

forty months thereafter, and you understand, of course, that out of the total of $20,000 that you understand that you and your husband are going to receive, you have to pay Mr. Farrell the fee that you agreed to pay him to represent you?

"MRS. CROCKER: Yes.

"MR. BARNHART: And you understand, of course, that you have to pay the hospital and doctor bills, that they are going to have to be paid?

"MRS. CROKER: Yes.

"MR. BARNHART: You understand those things?

"MRS. CROKER: Yes.

"MR. BARNHART: I have explained to you in this case that the jury could give you $50,000 or $100,000 but if they did it would just put the Service Car Company out of business, they wouldn't give you anything, you understand?

"MRS. CROKER: Yes.

"MR. BARNHART: This is all they are willing to give you, do you understand that?

"MRS. CROKER: I understand, yes.

"MR. BARNHART: Do you want the Court to enter this judgment for $17,000?

"MRS. CROKER: Yes, I will take it, I get around so poorly, I just can't get out.

"MR. BARNHART: That is all."

An oral stipulation for the compromise and settlement of claims growing out of personal injuries made in open court in the presence of the parties and preserved in the record of the court is as binding as a written agreement. Fair Mercantile Co. v. Union-May-Stern Co., 359 Mo. 385, 221 S. W.2d 751, 755 [9]. From the record so made and other evidence in the case, it is manifest that the settlement was authorized by Mrs. Croker, was with her consent, and is binding on her. There is no issue of ratification in the case.

Mrs. Croker further contends that the record is not effective because it was not made "in open court" as was the one approved in the Fair Mercantile case. She cites Art. I, § 14, of the Constitution of Missouri 1945, V.A.M.S., and § 476.170, RSMo 1959, V.A.M.S., which provide that the courts shall be open to every person and that every person may freely attend. But one of the cases she cites holds that a hearing outside of the regular courtroom does not deprive the court of jurisdiction and make its judgment a nullity. State ex rel. Green v. James, 355 Mo. 223, 195 S.W.2d 669, 671 [2, 3]. Moreover, the nature of the act and the circumstances under which it was done demonstrate that it is wholly immaterial that the record was made in a portion of the judge's chambers rather than the courtroom proper. The jury panel had been called and were sitting in the courtroom. Judge Aronson explained in his testimony that it was due to the presence of the jurors that the record was made in his chambers rather than asking the jurors to leave the courtroom. He described the proceeding as being handled in the same manner as if held in the courtroom proper. The plaintiff has not shown any prejudice by reason of the fact that the record was not made in the courtroom proper and we have found none. Nor is there any substance to the plaintiff's bare assertion that the record itself is not clear as to the meaning of the parties.

The plaintiff further urges that Mr. Barnhart, the attorney who "actually worked out the compromise, had no authority to represent plaintiff, and this fact was known by the defendants." The evidence is quite clear that Mr. Barnhart was engaged to assist in the prosecution of the litigation with the knowledge and consent of Mrs. Croker. He became an attorney of record in the case and was active in the preparation for trial at least ten months before the December

1959 trial date. Mrs. Croker herself testified that Mr. Farrell told her that Mr. Barnhart was coming into the case to help him and when she was told she would not have to pay an additional fee to Mr. Barnhart her reply was, "it was all right with me." The cases cited in which additional attorneys fees were being sought for an associate counsel brought into a case without the client's consent are not in point on the facts of this case. The contention is denied.

■ Next Mrs. Croker contends that if the settlement was authorized Consolidated breached its part of the agreement, thereby preventing performance in that some of the checks were made payable to Mr. Farrell as her attorney and others included the name of Mr. Barnhart as one of the payees, and the checks sent to her attorneys did not constitute a payment on the judgment. Under date of December 18, 1959, the attorneys wrote Mr. and Mrs. Croker advising them that all of the settlement checks and papers were on hand and requesting them to come to the office. When the Crokers did not come in, a similar letter was mailed dated January 6, 1960. Telephone calls were also made to the Crokers. On June 25, 1960, Mrs. Croker wrote to Consolidated Service Car Company, with a copy to Mr. Farrell and Mr. Wilson Gray, advising the Company that Mr. Farrell "no longer represents me and you are therefore instructed to make no further payments or not to send any further payments or checks to him on my behalf in an effort to fulfill the compromise judgment". Consolidated answered by letter saying it was ready and willing to perform. Mr. and Mrs. Croker made no timely objection to the tender of payment by checks or to the manner in which they were payable. Inclusion of the names of the lawyers was proper in order to protect the debtors against the lien rights of the attorneys. A tender of a check in payment of an obligation is sufficient where the payee refuses to accept on grounds other than the character or form of tender. Diehr v. Thompson Chemicals Corp., Mo.App., 281 S.W.2d 572, 578 [5]; Thompson v. St. Charles County, 227 Mo. 220, 126 S.W. 1044, 1048 [5]. The record clearly shows that the reason for the Crokers' refusal was their desire to obtain more money than provided by the settlement agreement. The contention that Consolidated breached its part of the agreement is without merit.

■ A further contention is that the settlement approved by the plaintiff's attorneys was grossly inadequate and unfair. The total amount to be paid is $20,000. There is no doubt that Mrs. Croker received very severe and disabling injuries which if liability had been established would have supported a verdict substantially in excess of $20,000. The cases cited by the plaintiff deal with awards made by juries. They do not involve payments made in compromise of disputed claims. The plaintiff wholly ignores serious obstacles in the way of her obtaining and collecting a substantial judgment. Among these is the fact that Consolidated contended that the automobile which struck Mrs. Croker was owned by the driver who was not at the time an agent of Consolidated because he was on business of his own and not on one of his regular runs. The driver was not insured at all and Consolidated was insured for only $5,000. Apparently Consolidated's business operations did not require a large amount of physical assets, and there was a strong likelihood that an execution issued on a substantial judgment would have put the Company out of business. The prospects of establishing negligence on the part of the defendant Hamilton and obtaining a substantial judgment against her were not favorable. Mrs. Croker herself testified that Mrs. Hamilton was proceeding north on Seventh Street with the green light in her favor when the Service Car struck and carried Mrs. Croker into the side of the Hamilton automobile. Counsel for the defendant Hamilton had considered the case as one of no liability and had refused to make any offer of settlement until he was prodded into doing so by the trial judge.

When the time spent by Mr. Barnhart and Mr. Farrell for the trial of the personal in-

jury case appeared to be questioned in the present case, the trial judge paid tribute to the thoroughness with which Mr. Barnhart prepared his cases. Mr. Barnhart's ability, industry and integrity are well known by reason of his practice in this and other courts of Missouri. The record demonstrates that the attorneys were diligent and conscientious in the prosecution of the claims. It is seldom that all parties are completely satisfied with a settlement because a compromise by its very nature requires mutual concessions. Nearly every one who settles feels that he would have done better to have tried his case, and many who stood trial wish they had settled. On the record before us, it appears that Mr. and Mrs. Croker were well advised to accept a settlement of $20,000.

It is well established that inadequacy of consideration alone is not a sufficient ground for setting aside the settlement of an unliquidated claim for damages resulting from personal injuries. Kavadas v. St. Louis Southwestern Ry. Co., Mo.App., 263 S.W.2d 736, 739 [5]; Trokey v. United States Cartridge Co., Mo.App., 222 S.W.2d 496, 502 [6]; Anderson v. Meyer Bros. Drug Co., 149 Mo.App. 554, 130 S.W. 829, 836 [5]. It is the policy of the law to encourage freedom of contract and peaceful settlement of disputes and a person not under disability or compulsion may release his rights for any consideration he decides to accept. Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704, 705 [4]. In the circumstances of this case, the consideration cannot be said to be inadequate or unfair.

The remaining point in Mrs. Croker's appeal is that the judgment is "legally unenforceable" because her husband was not a party to it. In the damage suit No. 14259–E, Mrs. Croker alleged that she "has become obligated for medical, hospital and physicians' treatment in the amount of Twenty Five Hundred ($2,500.-00) Dollars and will in the future become further so obligated". In his suit for services and expenses, Mr. Croker alleged that

"the value of the medical and hospital services plaintiff has expended and became liable for is now $5,000.00 and the nursing services to the extent of $1,500.00". Mrs. Croker infers that a wife cannot sue to recover the expenses incurred by reason of her injuries and that the judgment is ineffective unless the husband is joined in the suit. She cites cases where a husband and wife have sued for and recovered their respective claims in the same action and where the husband has been held to be primarily liable for his wife's medical and hospital services. The argument the appellant makes goes only to the amount of the damages and not to the right to sue separately. A married woman by contract may obligate herself personally to pay for services for which her husband is primarily liable. Section 451.290 RSMo 1959, V.A. M.S.; Skillman v. Ballew, Mo.App., 27 S.W.2d 1036, 1039 [9]. The assignment is denied.

Next we have for consideration the issues presented by the appeals of the defendants Consolidated and Hamilton. The question presented is whether the attorneys Farrell and Barnhart were representing Mr. Croker as well as Mrs. Croker on December 7, 1959, and were authorized to negotiate a settlement of his claim. In an equity action, it is the duty of the appellate court to review the evidence and reach its own conclusions as to the facts and, in determining the weight and sufficiency of the evidence, it will give deference to the findings of the trial court where proper. Anderson v. Abernathy, Mo., 339 S.W.2d 817, 818 [1]; Rosenbloom v. Grossman, Mo., 351 S.W.2d 735, 736 [2]; Cruwell v. Vaughn, Mo., 353 S.W.2d 616, 624 [7]. We will briefly review the pertinent evidence on these issues.

Mr. Farrell testified that Mr. Croker employed him by an oral agreement on June 10, 1958, after which Mr. Farrell went to the hospital and obtained a written contract from Mrs. Croker. On June 11, 1958, Mr. Farrell wrote a lien letter to Consolidated

Service Car Company notifying it of his employment in this fashion: "I have been retained by Mr. and Mrs. Croker to represent them in their claim against you * * *." This is significant because it is a written declaration made prior to this controversy. An adjuster for Consolidated testified that Mrs. Croker told him that Mr. Farrell represented her and her husband when the adjuster talked to her at the hospital on June 10, 1958. Reverend Williams did not listen to either of the conversations between Mr. Farrell and the Crokers on June 10, but his impression from what Mr. and Mrs. Croker said later was that they had employed Mr. Farrell. Mr. Croker was present at the December 5, 1959, conference at Mr. Barnhart's office and we are convinced from all of the evidence that settlement procedures and authority were discussed. If Mr. Croker had not authorized his assent, it is reasonable to expect that either Mrs. Croker or the attorneys would have talked to him before the settlement agreement was concluded. Thereafter, according to Mrs. Croker's testimony, she and Mr. Croker worked out together the wording of a letter to Mr. Farrell which asked for a written release of Mr. Croker's claim as well as her own.

■ An attorney's authority to compromise his client's claim may be established from circumstances and it is not necessarily dependent upon direct and affirmative evidence. Kahn v. Brunswick-Balke-Collender Co., Mo.App., 156 S.W.2d 40, 43 [10]. If Mrs. Croker and the attorneys were not authorized by Mr. Croker, it is reasonable to think that Mrs. Croker would have so declared at least when Mr. Barnhart dictated the agreement to the court reporter. Granting that her failure to speak up would not create authority where none existed, it does tend to destroy her testimony that Mr. Croker had not granted authority to Mrs. Croker and the attorneys. Moreover, the first objection the Crokers made to the settlement did not embody a claim that there was no authority to settle Mr. Croker's claim but was on the ground that they want-

ed more money. Nor was lack of authority claimed at the time the Crokers jointly composed the letter to Mr. Farrell. The claim of lack of authority appears to have been first made in September 1960 in Mr. Croker's answer to the defendants' counterclaims seeking specific performance. In these circumstances the contention appears to be an afterthought. Furthermore, the evidence tends to demonstrate that Mrs. Croker was the dominant member of the family. The transcript shows that during the trial of this case it was necessary for the court to admonish her not to signal answers to Mr. Croker while he was testifying.

■ In negotiating and recommending the settlement, Mr. Farrell and Mr. Barnhart were acting in accordance with Supreme Court Rule 4.08, V.A.M.R., which provides: "A lawyer should endeavor to obtain full knowledge of his client's cause before advising thereon, and he is bound to give a candid opinion of the merits and probable result of pending or contemplated litigation. * * * Whenever the controversy will admit of fair adjustment, the client should be advised to avoid or to end the litigation." The agreement to compromise should not be disregarded except for good cause shown. Supreme Court Rule 4.25 in part provides: "As far as possible, important agreements, affecting the rights of clients, should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by rules of Court." If the settlement agreement was fairly made and deemed to be in the best interest of their clients, Mr. Farrell and Mr. Barnhart properly insisted that it be performed.

■ We are not impressed by Mr. and Mrs. Croker's denials that Mr. Croker authorized the settlement. Their testimony was sometimes vague and contrary to established facts and common experience. At other times there was no recollection at all. On the other hand, the evidence in support

of the validity of the settlement agreement and its binding effect on the parties is cogent, consistent and convincing. Our conclusion is that the settlement agreement dictated into the record on December 7, 1959, was valid and binding on Mrs. Croker and Mr. Croker, jointly and severally, as well as upon the defendants Consolidated and Hamilton. Landau v. St. Louis Public Service Co., 364 Mo. 1134, 273 S.W.2d 255, 257 [3].

Since the settlement contract is valid and its terms are clear and complete, the defendants Consolidated Service Car Company, Inc., and Mrs. Josephine E. Hamilton are entitled to have it specifically performed. Landau v. St. Louis Public Service Co., 364 Mo. 1134, 273 S.W.2d 255, 259 [16]; Fair Mercantile Co. v. Union-May-Stern Co., 359 Mo. 385, 221 S.W.2d 751, 755 [12]; Ragan v. Schreffler, Mo., 306 S.W.2d 494, 499–500 [13].

One of the trial court's findings was that Mrs. Croker was struck and injured "as the result of a collision between two automobiles owned and negligently operated by Consolidated Service Car Company, Inc., and Josephine E. Hamilton". The negligence of the defendants and their responsibility for the operation of the vehicles were not at issue in this equity suit and no evidence was offered directly on the subjects. The finding may not be of any consequence in view of the conclusions we have reached, but in order to avoid further questions, the finding relating to negligence and agency should be eliminated from the decree.

The decree is affirmed in part and reversed in part. That portion of the decree finding that the judgment of $17,000 entered on December 8, 1959, is binding on Mrs. Croker is affirmed. That part of the decree finding in favor of Mr. and Mrs. Croker and against the defendants Consolidated and Hamilton on their counterclaims is reversed and the cause is remanded with directions to grant the relief prayed for by the defendants Consolidated and Hamilton against

Mr. and Mrs. Croker. The trial court is further authorized and directed to make such further orders or decrees as are necessary and proper to complete the settlement consistent with the views expressed herein.

All of the Judges concur.