**B–MALL CO., Respondent,**

v.

**Michael C. WILLIAMSON, et al., Appellants.**

**No. WD 54667.**

Missouri Court of Appeals, Western District.

Submitted June 10, 1998.

Decided Aug. 25, 1998.

Rehearing Denied Oct. 27, 1998.

---

John Benge, Kansas City, for appellants.

Robert A. Mintz, Overland Park, KS, for respondent.

Before ULRICH, C.J., P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

This case involves the issue of whether a party, in settling a litigation claim, may gratuitously add the name of the claimant's former attorney to the settlement check in order to protect itself from an attorney's lien claim.

Michael and Chandra Williamson appeal a judgment ordering the parties to perform the terms of a settlement agreement. The Williamsons claim that the trial court erred in ordering them to execute a release and perform under a settlement agreement because the opposing party added the name of a former attorney to the settlement check without their consent. Because we find there was evidence of an agreement, and because we hold that the addition of the lien claimant's name to the check was not a breach of the agreement, we affirm the judgment.

### Factual Background

The respondents, B–Mall Co. and JV Missouri One, are the owners of Bannister Mall Shopping Center, a shopping center located in Kansas City, Missouri. The respondents are hereafter referred to collectively as "the shopping center." The appellants, Michael and Chandra Williamson, were tenants at Bannister Mall as the operators of a delicatessen and a rare coin and collectors shop. The shopping center sued the Williamsons

alleging that the Williamsons had breached and anticipatorily breached their leases on the deli and the rare coin shop. The Williamsons hired Arthur Stoup as their attorney, and filed a counterclaim, alleging that the shopping center's employees, acting as security guards, had systematically pilfered and robbed them. They sued on theories of negligent supervision, constructive eviction, and breach of lease. Later, the Williamsons terminated their relationship with Mr. Stoup. In March, 1996, the Williamsons retained John Benge to represent them in the case.

Settlement negotiations between the parties commenced. During negotiations, Robert Mintz, counsel for the shopping center, inquired as to whether the Williamsons had any outstanding obligations to Mr. Stoup. He was advised that Mr. Stoup claimed that the Williamsons owed him $22,000.00 in attorneys' fees and expenses. He was further advised that the Williamsons were unhappy with Mr. Stoup and did not intend to pay the money he claimed was due.

In September, 1996, the shopping center and the Williamsons attempted mediation. Mr. Benge testified that the parties discussed Mr. Stoup's claim for attorney fees and that the mediator told them: "I don't think [the Williamsons] are going to have any problem getting away from paying [Mr. Stoup] any money on the attorney's fees." Mr. Benge testified that the mediator also offered advice on how to avoid the payment of the attorney's fees.

The week following the mediation, further settlement discussions took place. Mr. Benge contends that he informed the attorney for the shopping center that the case had to be settled exclusive of any sums that would have to be paid to Mr. Stoup. The shopping center disputed this account of the discussion, contending that the only discussion related to the lien was a question about whether Mr. Stoup had sent a lien letter to Mr. Benge.

On October 3, 1996, the shopping center made a final settlement offer of $70,000.00. The Williamsons claimed that Mr. Mintz, counsel for the shopping center, once again inquired as to any lien asserted by Mr. Stoup. Later that day, Mr. Benge left a voice mail message accepting the settlement offer. He said:

> Rob, this is John Benge, 561–4700. I am calling to tell you that the Williamsons have agreed to accept the offer of $70,-000.00 with complete releases going every which way and just the simple confidentiality and non-disparagement clause that we discussed. I will send you over a confirming letter, and now this is also premised on the fact that Olthoff is gonna sign off on a release too on any claims made back against the Williamsons. So everybody's got to be out of this thing, including Collectors Kingdom.

A draft of the proposed settlement was prepared by Leland Corley, an attorney representing B–Mall, and sent to all counsel for review. The draft did not include any provisions whereby the Williamsons were asked to identify any liens that might be applicable in the case, nor did it include any provision for indemnification. It did contain a waiver whereby the Benge Law Firm waived any fees not provided for by the agreement and acknowledged the satisfaction of its attorneys' lien. A redraft of the settlement was executed by the Williamsons on October 21, 1996, but was never delivered to the respondents. The executed agreement contained no reference to any lien that Mr. Stoup might possess. It did contain a provision that "Benge Law Firm hereby waives any claim for attorney's fees from B–Mall, except to the extent that such attorney's fees are included in the Payment specified in paragraph 1 of this Agreement, and acknowledges full and complete satisfaction of any attorney's lien."

On October 23, 1996, counsel for respondents sent a settlement check from Royal Insurance Company in the amount of $70,-000.00. On the check, the payees were named as "MICHAEL & CHANDRA WILLIAMSON AND JOHN BENGE, THEIR ATTORNEY, AND ATTORNEY ARTHUR STOUP." The words "AND ATTORNEY ARTHUR STOUP" were added in a different typeface. Mr. Benge contacted Mr. Mintz concerning Mr. Stoup's inclusion on the check. Mr. Mintz explained that he had added Mr. Stoup as a payee on the check

because his research had indicated to him that Mr. Stoup had a lien. The settlement check was returned to Mr. Mintz.

On October 30, 1996, the Williamsons filed a motion to enforce the settlement agreement. In that motion they ask the court to "enforce the terms and provisions of the settlement agreement entered into between plaintiff, B–Mall Co., third-party defendants, Collectors Kingdom, Inc., and the Williamsons." The motion detailed the disagreement of the parties concerning the inclusion of Arthur Stoup's name on the check. However, the motion acknowledged that the Williamsons executed the settlement agreement and that Mr. Benge "contacted Mr. Corley and advised him that the Settlement Agreement and Release was in form and substance satisfactory to the Williamsons and had been executed by them." The Williamsons contended that the inclusion of Arthur Stoup's name on the check was essentially a breach of the agreement, that "[t]he alteration of the check by Mr. Mintz by the addition of Arthur Stoup as a payee was not in accordance with the agreement of the parties."

The respondents filed their own motion to enforce settlement on November 6, 1996. The Williamsons withdrew their motion to enforce settlement a few days later, on November 9, 1996. A hearing on the matter was held on April 3, 1997 and July 11, 1997. On July 15, 1997, the trial court granted the respondents' motion. The court ordered the parties to perform the terms of the settlement agreement. The Williamsons were ordered to execute the release agreement in consideration of the settlement draft. The court further ordered that all claims, counterclaims and the third party claim be dismissed with prejudice. The Williamsons appeal.

### Standard of Review.

Review is performed pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is not substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* This court defers to the trial court's findings of fact, recognizing the superior ability of the trial court to judge the credibility of the witnesses. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991). All evidence and permissible inferences favorable to the prevailing party are accepted as true; evidence and inferences to the contrary are disregarded. *Pathway Financial v. Schade*, 793 S.W.2d 464, 467 (Mo. App.1990).

Agreements to settle pending lawsuits are enforceable by motion. *Garrison v. Nichols*, 908 S.W.2d 373, 374 (Mo.App.1995). The party requesting specific performance of the agreement has the burden of proving the claim by clear, convincing and satisfactory evidence. *Id.* The agreement does not have to be in writing (unless the subject matter is within the Statute of Frauds) and it may be considered valid and enforceable even if it contemplates that a release will be signed at a later time. *Byrd v. Liesman*, 825 S.W.2d 38, 39 (Mo.App.1992). Freedom of contract and peaceful settlement of disputes are encouraged in the law. *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 480–81 (Mo. banc 1972).

### A Valid Settlement Agreement Exists

The Williamsons argue that the trial court erred by ordering them to execute a release and perform under the settlement agreement because the shopping center failed to prove by clear, convincing and satisfactory evidence that there was a meeting of the minds on a material term of the agreement. The respondents contend that there was sufficient competent evidence before the court to support the finding that the parties reached an enforceable settlement agreement and that the addition of Mr. Stoup's name to the settlement check did not invalidate that agreement.

The argument advanced by the Williamsons is based on the premise that there was no meeting of the minds as to a material term of the agreement—the inclusion of Mr. Stoup as a payee on the settlement check. Because a settlement agreement is a species of contract and, therefore, subject to contract law, a meeting of the minds is required. *Emerick v. Mutual Ben.*

*Life Ins. Co.,* 756 S.W.2d 513, 518 (Mo. banc 1988). In determining whether a meeting of minds has occurred, this court looks at the objective manifestations of the parties. *McDaniel v. Park Place Care Ctr., Inc.,* 918 S.W.2d 820, 827 (Mo.App.1996). A meeting of the minds is necessarily implied by the existence of a contract. *L.B. v. State Committee of Psychologists,* 912 S.W.2d 611, 617 (Mo.App.1995). It is the actions, and not the intentions or suppositions of the parties, that determine whether or not there is a contract and the terms of the contract. *Id.*

■ The Williamsons presented evidence that the settlement amount was to be exclusive of Mr. Stoup's attorneys' lien. However, there is evidence in the record supporting a contrary proposition. The settlement agreement itself says nothing about the Stoup lien. There was conflicting evidence as to the oral discussions. We defer to the trial court on determinations as to credibility. *Brawley,* 811 S.W.2d at 365. The Williamsons were presented with a settlement agreement. They signed that agreement. The purpose of a signature is to show mutuality of assent. *See Sanders v. DeWitt,* 579 S.W.2d 707, 711 (Mo.App.1979). Not only did the Williamsons sign the settlement agreement, they filed a motion to have the settlement agreement enforced. In that motion they acknowledge that they executed the settlement agreement and that Mr. Benge "contacted Mr. Corley and advised him that the Settlement Agreement and Release was in form and substance satisfactory to the Williamsons and had been executed by them." The motion argued that "[t]he alteration of the check by Mr. Mintz by the addition of Arthur Stoup as a payee was not in accordance with the agreement of the parties." In other words, the Williamsons acknowledged that an agreement had been reached between the parties and that they considered the inclusion of Mr. Stoup's name on the check as a payee a breach of that agreement. They cannot now argue that no agreement was ever reached. Perhaps what they are really thinking is that they would not have settled if they had known Mr. Stoup's name would be on the check. That may be true, but such an assertion simply begs the issue as to the legal question of whether the shopping center was entitled to add Mr. Stoup's name to the check.

### *The Inclusion of the Lien Claimant's Name on the Check Does Not Invalidate the Agreement*

■ Having found that a valid settlement agreement exists, we turn to the question of whether the inclusion of Mr. Stoup's name on the check constituted a breach of that agreement. Mr. Stoup claims a lien pursuant to § 484.130, RSMo 1994, by virtue of the fact that he filed a counterclaim in the original action. Mr. Benge advised the trial court that he was aware of that lien. Section 484.130 provides:

The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

§ 484.130, RSMo 1994. *See also Reed v. Garner Industries, Inc.,* 832 S.W.2d 945, 949 (Mo.App.1992). The action taken by respondents in including Mr. Stoup's name as a payee on the settlement check was an acknowledgement of his lien.

■ The shopping center had notice of the lien by virtue of Mr. Stoup's filing a counterclaim in the action. *See Downs v. Hodge,* 413 S.W.2d 519, 523–24 (Mo.App. 1967). The inclusion of Mr. Stoup's name as a payee on the settlement check serves as an acknowledgment of Mr. Stoup's lien rights and as protection for the respondents from any action brought against them by Mr. Stoup on the lien. Section 484.130 does not provide any specific remedy for enforcing the lien. *See Kansas City Area Transp. Auth. v. 4550 Main Associates,* 893 S.W.2d 861, 867 (Mo.App.1995). One of the possible remedies available to Mr. Stoup is an independent

action brought against the shopping center. Where a settlement has been made without regard for the attorneys' lien, an attorney may bring an independent action against the defendants. *Gerritzen v. Louisville & N.R. Co.*, 115 S.W.2d 44, 45 (Mo.App.1938).

There is authority for the proposition that it is not a breach of a settlement agreement for a defendant to recognize a lien by adding the lienholder as a payee on the settlement check. In *Gaunt v. Shelter Mut. Ins. Co.*, 808 S.W.2d 401 (Mo.App.1991), the Gaunts brought an action against Shelter Mutual Insurance Company based upon a fire insurance policy. The State of Missouri, Division of Child Support Enforcement, intervened in the action, claiming an interest based upon § 454.518, which provides for a lien on claims, counterclaims, and law suits of persons delinquent in child or spousal support. *Id.* at 402. Mrs. Gaunt was delinquent in her child support payments. *Id.* at 403. The insurance company and the Gaunts agreed to settle the claim, with the insurance company promising to pay the Gaunts $9,500.00. *Id.* Shelter received a lien notice and order to withhold. Shelter issued two settlement drafts, one in the amount of $3,900.00, payable to the Gaunts, their attorney and the circuit clerk, and one in the amount of $5,600.00, payable to the Gaunts and their attorney. *Id.* The court held that Shelter did not breach its agreement by issuing the two drafts. *Id.* at 408.

*Croker v. Consolidated Service Car Co., Inc.*, 365 S.W.2d 524 (Mo.1963), is also instructive. In *Croker*, the plaintiff's original attorney filed a damage suit on her behalf and brought in an attorney experienced in personal injury litigation as additional counsel. *Id.* at 526–27. Before the case was settled, the plaintiff discharged both of these attorneys and hired a new attorney. *Id.* at 527. After the case was settled, the plaintiff argued, *inter alia*, that the settlement agreement she had reached with the defendant was breached because the defendant tendered checks made payable to the attorneys who had been discharged. *Id.* at 531. The court held:

> Inclusion of the names of the lawyers was proper in order to protect the debtors

against the lien rights of the attorneys. A tender of a check in payment of an obligation is sufficient where the payee refuses to accept on grounds other than the character or form of tender. The record clearly shows that the reason for the Crokers' refusal was their desire to obtain more money than provided by the settlement agreement. The contention that Consolidated breached its part of the settlement is without merit.

*Id.* (Citations omitted). Similarly, in this case, the decision of the shopping center to include the name of Mr. Stoup on the check was not a breach of the agreement.

### *Conclusion*

The trial court did not err by ordering the Williamsons to execute a release and perform the settlement agreement. The judgment is affirmed.

ULRICH, C.J., and EDWIN H. SMITH, J., concur.