**Mesa OWEN and Mary Ellen Sisk, Plaintiff/Respondents,**

**v.**

**Dale HANKINS, Defendant/Appellant,**

**and**

**Greg Cummings, Stacy Cummings, and Marla B. Cantwell, Defendants/Respondents.**

**No. SD 29440.**

Missouri Court of Appeals, Southern District, Division One.

July 29, 2009.

Douglas W. Greene, III, Willard, for Appellant.

Richard L. Schnake & Christaan Horton, Neale & Newman, LLP, Springfield, for Respondent Owen & Sisk.

Deborah K. Dodge, Hall, Ansley, Rodgers & Sweeney, P.C., Springfield, for Respondent Cummings.

ROBERT S. BARNEY, Judge.

Dale Hankins ("Appellant") appeals the trial court's order which granted a motion to enforce an oral settlement agreement filed by Mesa Owen ("Ms. Owen") and Mary Ellen Sisk ("Ms. Sisk").

This matter relates to the disposition of two pieces of real property that we term "Tract I" and "Tract II," which both Ms. Owen and Appellant maintain they own.[1] As best we can discern from the record, Appellant, Ms. Owen, and Ms. Sisk are siblings.

According to Ms. Owen and Ms. Sisk, on November 30, 1998, Appellant fraudulently created a general warranty deed conveying Tract I and Tract II to himself from Ms. Owen. This deed was notarized by Marla B. Cantwell ("Ms. Cantwell")[2] and filed with the Taney County Recorder of Deeds.[3] Thereafter, on July 25, 2005, without the knowledge of either Ms. Owen or Ms. Sisk, Appellant conveyed Tract II to Greg and Stacy Cummings ("Mr. and Mrs. Cummings") via a general warranty deed.

On October 30, 2006, Ms. Owen and Ms. Sisk filed a four count petition. In Count I of the petition, they requested the trial court quiet title as to Tract I and Tract II in them because "[o]n or about November 30, 1998, [Appellant] caused [a general warranty deed] to be prepared concerning [Ms.] Owen's ownership in Tract I and Tract II" and this general warranty deed did "not bear the signature of [Ms.] Owen, and contains ... false attestation[s] by [Ms. Cantwell]." Count II requested partition of the two tracts of land. Count III requested cancellation of a promissory note in the amount of $50,000.00 from Ms. Owen to Appellant which was purportedly created and forged by Appellant without Ms. Owen's knowledge and without her signature. Count IV was brought against Ms. Cantwell alleging statutory misconduct of a notary for the documents purportedly forged by Appellant and notarized with her official seal.

Responsive pleadings were then filed by the various parties, including a five count cross-claim against Appellant and Ms. Cantwell by Mr. and Mrs. Cummings in relation to their purchase of Tract II. There was apparently much legal wrangling thereafter including a settlement conference on August 30, 2007, which was attended by Ms. Owen, Ms. Sisk and their attorney, as well as Appellant and his counsel. Mr. and Mrs. Cummings and their attorney did not appear at this meeting. At the conclusion of the lengthy settlement conference, an oral agreement ("the Oral Settlement Agreement") was reached.

Several days after the settlement conference, a "Settlement Agreement and Release of all Claims" ("the Written Settlement Agreement") was prepared by counsel.[4] Appellant refused to execute the Written Settlement Agreement when it was presented to him several weeks later.

1. This Court notes there are no allegations in the petition relating to any possible ownership interest in the properties by Ms. Sisk and it is unclear as to why she is a party to this lawsuit.

2. Ms. Cantwell is not a party to this appeal.

3. On this same date, Appellant filed a beneficiary deed wherein he purportedly granted all of his interest in and to Tracts I and II to Ms. Owen and her daughter. The conveyance was made effective on Appellant's death.

4. Further, attached to the Written Settlement Agreement were several quit claim deeds, warranty deeds, and a promissory note to be executed in conjunction with the agreement between the parties.

On September 28, 2007, Ms. Owen and Ms. Sisk filed a "Motion to Enforce Settlement" which asserted the Oral Settlement Agreement had been reached by the parties at the settlement conference, but that Appellant was now "evidencing an intent not to execute the [Written] Settlement Agreement...." Attached to their motion was an unexecuted copy of the Written Settlement Agreement which contained signature lines for Ms. Sisk, Ms. Owen, and Appellant. It provided that Appellant would convey Tract I via warranty deed to Ms. Owen's daughter with the reservation of a life estate in himself; that Ms. Owen would pay Appellant $20,000.00 in exchange for canceling the $50,000.00 promissory note dated November 30, 1998, which Ms. Owen asserted in her petition was forged; that Appellant would return all money received from Mr. and Mrs. Cummings related to their purchase of Tract II; and conditioned upon their agreement, Mr. and Mrs. Cummings would execute a quit claim deed in favor of Appellant. Appellant was also to convey Tract II to Ms. Owen with a quit claim deed and all claims set out in the civil lawsuit would be dismissed and released.[5] Accordingly, Ms. Owen and Ms. Sisk requested the trial court enter an order enforcing the terms of the Oral Settlement Agreement as set out in the unexecuted Written Settlement Agreement.

A short hearing was held on this motion on November 20, 2007, at which Appellant and his former attorney, John Rice ("Mr. Rice"), briefly testified.[6] Mr. Rice testified that he represented Appellant at the time of the settlement conference in August of 2007. He stated that he and Appellant appeared at the three to four hour settlement conference and at the conclusion of the settlement conference a settlement had been reached. Mr. Rice also testified that on September 5, 2007, he received a letter from counsel for Ms. Owen and Ms. Sisk which contained a copy of the unexecuted Written Settlement Agreement. He stated he felt it "accurately reflect[ed] the [oral] settlement that was made ..." between the parties on August 30, 2007, with the exception of a detail relating to who would pay the property taxes on Tract I. Mr. Rice also testified that shortly after receiving the unexecuted Written Settlement Agreement he withdrew from the case.

Appellant testified that he had extensive medical and psychological problems associated with post-traumatic stress disorder related to his military service. He stated that he was confused at times at the settlement conference with some of the legal terminology used, but that he was competent to make legal decisions despite his various medications. He stated he did not understand that the settlement conference was the final determination of the matter because he knew that the terms of the agreement would have to be embodied in a writing which would be "contingent [on] everybody" agreeing to its terms including himself. He related he had become "irritated" and full of anxiety at the settlement conference and to prevent himself from getting upset he remained quiet during the discussions. Appellant also stated that at the conclusion of the settlement conference, he did not feel that a final agreement had been reached; that he had not agreed

---

5. The record on appeal does not contain an executed copy of the Written Settlement Agreement nor does it contain executed quit claim deeds, warranty deeds, or a new promissory note between Appellant and Ms. Owen.

6. We note Appellant did not provide this Court with the actual exhibits which were admitted into evidence at the hearing in this case. Accordingly, we cannot be sure if the Written Settlement Agreement was introduced into evidence before the trial court.

to the terms of the Oral Settlement Agreement; and that he had not agreed to the terms as ultimately set out in the unexecuted Written Settlement Agreement.

Appellant also stated he had received a copy of the unexecuted Written Settlement Agreement in the mail in early September of 2007, which sought to memorialize the oral understanding between himself and his sisters. He testified "it made [him] mad" and he phoned Mr. Rice. He stated he felt the Oral Settlement Agreement "comes up short for [him]" and he cannot "see where it's any benefit to [him] whatsoever." Saliently, at the hearing he acknowledged he never voiced any concerns or hesitations about the terms of the Oral Settlement Agreement from the time of the conference until he received the unexecuted Written Settlement Agreement in the mail. He further acknowledged he understood the conference was being held in an effort to settle the case and that he had appointed Mr. Rice to act on his behalf. Appellant also acknowledged that he was notified shortly after receiving a copy of the unexecuted Written Settlement Agreement in the mail that Mr. and Mrs. Cummings had agreed to its terms; however, he felt that he also still had the right to change his mind until such a time as it was actually signed.

On September 26, 2008, the trial court granted the motion to enforce the Oral Settlement Agreement as requested by Ms. Owen and Ms. Sisk. This appeal followed.

■ Appellant now raises three points of trial court error. In that the points are interrelated, we shall review Points I and II conjunctively. In his first point relied on, Appellant maintains the trial court erred in enforcing the Oral Settlement Agreement because it "was and is, in reality, a gratuitous offer, having no element of bargain, that has never been accepted by the parties hereto and is, therefore, an unaccepted offer of a unilateral contract, incapable of enforcement.... " Appellant's second point relied on asserts the trial court erred in enforcing the Oral Settlement Agreement because it "was and is fatally defective and incapable of enforcement, in that it fails to satisfy the general and ordinary rules of contract construction observed in the State of Missouri .... "

The standard of review of a court-tried case is established by Rule 84.13(d), Missouri Court Rules (2007). This Court is required to sustain the judgment of the trial court "unless it is against the weight of the evidence, there is no substantial evidence to support it, or the trial court has erroneously applied or declared the law." *Muilenburg, Inc. v. Cherokee Rose Design and Build, L.L.C.*, 250 S.W.3d 848, 851 (Mo.App.2008); *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "This [C]ourt defers to the trial court's findings of fact, recognizing the superior ability of the trial court to judge the credibility of the witnesses." *B–Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo.App.1998). "All evidence and permissible inferences favorable to the prevailing party are accepted as true; evidence and inferences to the contrary are disregarded." *Id.* This Court "review[s] upon the law and the evidence, as in suits of an equitable nature, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses." *DeWitt v. Lutes*, 581 S.W.2d 941, 945 (Mo.App.1979).

■ It is axiomatic that "parties to disputes have a right to waive their day in court and to equitably compromise and settle their differences, as it is the policy of the law to encourage freedom of contract and peaceful settlement of disputes." *Id.* "A compromise settlement need not be in writing unless the subject matter is

within the statute of frauds."[7] *Byrd v. Liesman,* 825 S.W.2d 38, 39 (Mo.App. 1992); *see B–Mall,* 977 S.W.2d at 77.

■■■ "An oral agreement settling a lawsuit is valid even though not recited in open court on the record." *Highley v. Martin,* 784 S.W.2d 612, 616 (Mo.App. 1989). Further, "[a] settlement can be valid and enforceable although it contemplates a release being signed later." *Byrd,* 825 S.W.2d at 39. Likewise, such agreements can be "valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning." *Vulgamott v. Perry,* 154 S.W.3d 382, 390 (Mo.App. 2004).

■■■ "No specific process exists in Missouri for enforcing a settlement agreement. One possible method of enforcement is to raise the issue in a motion to enforce the settlement agreement." *Muilenburg,* 250 S.W.3d at 851. Such a "motion adds a collateral action seeking specific performance of the agreement." *Byrd,* 825 S.W.2d at 39; *see DeWitt,* 581 S.W.2d at 945 (holding that a motion to enforce a settlement agreement is "in reality, a suit for specific performance. Specific performance is purely an equitable remedy"). " 'The party requesting specific performance of a settlement agreement has the burden of proving, by clear, convincing and satisfactory evidence, his claim for relief.' " *Byrd,* 825 S.W.2d at 39 (quoting *Randall*

*v. Harmon,* 761 S.W.2d 278 (Mo.App. 1988)).

Here, the record reveals Ms. Owen, Ms. Sisk, Appellant and their attorneys met at the settlement conference on August 30, 2007, in order to resolve the underlying civil lawsuit. After three or four hours of discussion, the Oral Settlement Agreement was reached among Ms. Owen, Ms. Sisk and Appellant. Appellant's attorney, Mr. Rice, testified at the hearing that the Oral Settlement Agreement was reached at that meeting and there was no indication that the agreement would not be followed in the future. Appellant acknowledged at the hearing that he was present at the settlement conference; that he knew the purpose of the conference was to settle the issues between the parties; that he did not indicate at that time that he was unhappy in any way with the Oral Settlement Agreement; and he had voiced no concerns to his counsel or the other parties until almost two weeks later when he received the unexecuted Written Settlement Agreement in the mail. Appellant clearly testified at the hearing that he understood the Oral Settlement Agreement was contingent on Mr. and Mrs. Cummings agreeing to the outcome and he understood that there would later be a Written Settlement Agreement memorializing the Oral Settlement Agreement reached on August 30, 2007. Additionally, Appellant testified at the hearing as to the terms of the Oral Settlement Agreement. Giving the trial court "due regard … to judge the credibility of the witnesses," *DeWitt,* 581

---

**7.** Here, while Appellant raised in his Answer the affirmative defense that the statute of frauds was violated by the Oral Settlement Agreement, he failed to object at the hearing to the introduction of evidence relating to the Oral Settlement Agreement and he failed to raise this issue in his points relied on in this appeal. "[E]ven if the statute of frauds is pled, 'failure to object to offered evidence of the oral agreement constituted a waiver of the protection of the statute.' " *Crawford v. Detring,* 965 S.W.2d 188, 192 (Mo.App.1998) (quoting *Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 879 (Mo.App.1984)). We shall not address that issue here.

S.W.2d at 945, this Court finds that Ms. Owen and Ms. Sisk met their burden of proving " 'by clear, convincing and satisfactory evidence ...' " that they were entitled to relief. *Byrd*, 825 S.W.2d at 39 (quoting *Randall*, 761 S.W.2d at 278). The trial court did not err. Points I and II are denied.

■ In his third point relied on, Appellant maintains the trial court erred in enforcing the Oral Settlement Agreement because it

> was never accepted by Appellant, [i]ndividually, or through his attorney ... in that Appellant's silence and displeasure with the ... terms was reasonably apparent to the other negotiation participants; that Appellant was not competent to accept any contractual undertaking under the circumstances then and there existing; and that the enforcement of an agreement so patently unfair and one-sided would amount to a manifest injustice of such scope and magnitude as to shock the conscious of the community, in general, and of this honorable court, in particular.

■ In our review, we initially observe that it is a longstanding principle that "where a party's attorney purports to have authority to settle and reaches an agreement, it is incumbent on the client to prove the attorney lacked authority, since counsel's act of settling is presumed to be authorized." *Byrd*, 825 S.W.2d at 39. "The authority of the attorney, like that of any agent, may be established by the attorney and his testimony in that regard is admissible to prove the agency and the nature and scope of his authority to sign the agreement in question." *Sappington v. Miller*, 821 S.W.2d 901, 904 (Mo.App. 1992). "An attorney can testify as to his authority to settle, since such communication is not within the pale of the protection of the privilege." *Id.*

Here, Appellant admitted that Mr. Rice was his counsel; that he had authorized Mr. Rice to negotiate with Ms. Owen, Ms. Sisk, and their counsel on his behalf; that Mr. Rice was his appointed spokesperson at the settlement conference; and that he spoke with and consulted with Mr. Rice during the settlement conference.

Mr. Rice testified that he was Appellant's counsel; that he negotiated on his behalf at the settlement conference; and that Appellant was present at that conference, but failed to indicate he was displeased with the negotiations. Appellant has failed to prove Mr. Rice lacked authority to settle this matter on his behalf at the settlement conference. *Byrd*, 825 S.W.2d at 39. Furthermore, as previously recited, Appellant's counsel testified that the Oral Settlement Agreement had been reached among the parties present. Also, Appellant admitted at the hearing that he paid attention to the negotiations at the settlement conference; that he knew the settlement conference was "for the purpose of settling ..." the lawsuit; that his medications did not impair is ability to understand the proceedings; and that he understood the majority of the discussions. As already stated, we defer to the trial court on matters of witness credibility. *DeWitt*, 581 S.W.2d at 945. Point III is denied.

The trial court did not err in granting the motion to enforce the Oral Settlement Agreement at issue. The enforcement of such an agreement is not so patently unfair and one-sided as to amount to a manifest injustice or shock the conscious of the community or the court. The judgment of

the trial court is affirmed.[8]

BATES, P.J., and BURRELL, J., concur.

---

8. Appellant's "Motion to Correct Legal File and Record on Appeal," which was taken with the case, is granted.