[631 NYS2d 816]

PAULA AGLIRA, Plaintiff, v JULIEN & SCHLESINGER, P. C., et al., Defendants and Third-Party Plaintiffs-Respondents. EMPLOYERS INSURANCE OF WAUSAU et al., Third-Party Defendants-Appellants, and DENNIS SARNI, Third-Party Defendant-Respondent, et al., Third-Party Defendants.

First Department, September 21, 1995

## APPEARANCES OF COUNSEL

*Karen P. Ryan* of counsel *(Lori A. Marano* on the brief; *Schiavetti, Geisler, Corgan, Soscia, DeVito, Gabriele & Nicholson,* attorneys), for Employers Insurance of Wausau, third-party defendant-appellant.

*Thomas A. Leghorn* of counsel *(Steven Verveniotis* and *Gerald A. Stein* on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for Martin, Clearwater & Bell, third-party defendant-appellant.

*Montgomery L. Effinger* of counsel *(O'Connor, McGuinness, Conte, Doyle, Oleson & Collins,* attorneys), for third-party plaintiffs-respondents.

*Stephen M. Lazare* of counsel *(Lazare Potter & Giacovas,* attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

This lawsuit is an outgrowth of the settlement of a medical malpractice action brought by an infant, Michael Aglira, and his father, as his guardian and in the father's individual capacity. Julien & Schlesinger, P. C., and Stuart A. Schlesinger (Julien & Schlesinger), defendants and third-party plaintiffs in the within action, represented the infant and his father in that action and are sued herein by the infant and his mother, his conservatee, for their alleged malpractice in failing to secure the appropriate annuity for the infant from

the settlement proceeds of the underlying medical malpractice action. Julien & Schlesinger have, in turn, impleaded others, including Martin, Clearwater & Bell, the attorneys for two of the settling defendants in the underlying action, who arranged, on behalf of Employers Insurance of Wausau (Employers), also named as a third-party defendant, the insurer of the two physician defendants represented by Martin, Clearwater & Bell, payment of the settlement funds and the release of Employers.*

The underlying medical malpractice action was settled in open court on December 7, 1983 for $1,000,000, of which, according to the terms of the settlement, $600,000 was to be used to purchase an annuity for the infant. The balance of $400,000 was paid directly to Julien & Schlesinger and the infant's father. On December 14, 1983 Martin, Clearwater & Bell wrote to Julien & Schlesinger offering two alternative annuity proposals for the infant. Employers would purchase the annuity from Employers Life Insurance Company of Wausau, which would issue the annuity in Employers' name. A broker's services would not have been required for the purchase of such an annuity. Julien & Schlesinger rejected the proposal. By order of that same date, December 14, 1983, the court confirmed the settlement and directed Employers and the insurer of Bronx Lebanon Hospital, another defendant in that action, to purchase the annuity from a "licensed New York Life Insurance Company" on such terms and provisions as are acceptable to the court.

Thereafter, on December 21, 1983, Litigation Support Corporation, a California corporation and also a third-party defendant herein, acting for Julien & Schlesinger, wrote to the attorneys representing Bronx Lebanon, with a copy to Martin, Clearwater & Bell, to advise that it had, pursuant to the court's order, drafted a structured settlement agreeable to Julien & Schlesinger. Litigation Support advised that the settlement package was to be "underwritten by Executive Life Insurance Company of New York, rated A+ (excellent) Class XIV." The record is clear that no one other than Julien & Schlesinger had any part in the selection of Litigation Support to purchase and administer the annuity.

---

* As a result of motion practice before us in the course of this appeal, we are advised that the infant plaintiff and his mother have now in an amended complaint asserted direct claims, based on fraud and breach of contract, against the third-party defendants.

By supplemental order dated January 16, 1984, the court adopted the terms of Litigation Support's proposal and directed that the annuity be purchased from "Executive Life Insurance Company of New York." On February 9, 1984, Julien & Schlesinger wrote to the settling defendants' attorneys to advise them to "contact Dennis Sarni [of Litigation Support] in order to effectuate the order of [the court] dated January 16, 1984." Following up on Julien & Schlesinger's advice, Martin, Clearwater & Bell wrote to Litigation Support on February 10, 1984, enclosing the court's January 16, 1984 order and specifically referring to the provision that the annuity "be purchased from the Executive Life Insurance Company of New York". By letter dated March 5, 1984, Litigation Support wrote to Martin, Clearwater & Bell to confirm the details of the annuity and advise that the "annuities are being underwritten by Executive Life Insurance Company", not Executive Life Insurance Company of New York, as directed, again referring to the insurer as "rated A+ (excellent)." Litigation Support also advised that the annuity policy would be owned by First Executive Insurance Company, the reinsurer of Executive Life.

At about the same time, Litigation Support forwarded a draft annuity agreement concerning the tender of the settlement funds to be used to purchase the annuity to Martin, Clearwater & Bell, who, on March 21, 1984, forwarded the draft, unchanged, to counsel for Bronx Lebanon. That same day, Martin, Clearwater & Bell sent a revised draft of the agreement to Litigation Support incorporating therein the court's orders directing the purchase of the contemplated annuity from Executive Life Insurance Company of New York and attaching copies of the same.

The draft prepared by Litigation Support provided that "[i]n consideration of the tendering of a lump sum premium payment by [the insurers] which drafts are [to be] made payable to Executive Life Corporation, a California corporation, Litigation Support Corporation agrees to purchase from Executive Life Corporation an annuity, the terms and obligations of which are set forth in * * * the Order of the Court, Exhibit 'C'." The final draft, as corrected by Martin, Clearwater & Bell, read instead, "[i]n consideration of the tendering of * * * draft[s] * * * which drafts are to be made payable to Litigation Support Corporation, a California corporation, Litigation Support Corporation agrees to purchase from Executive Life Corporation an annuity, the terms and obligations of which

are set forth in * * * the Order of the Court, Exhibit 'C'." Thus, as can be seen, Martin, Clearwater & Bell moved the term, "a California corporation", which followed "Executive Life Corporation" in the original draft, and placed it after "Litigation Support Corporation" in the corrected final draft, thus accurately reflecting the fact that Litigation Support was a California corporation and that the annuity underwriter was not, in accordance with the court's order, a California corporation. In providing that the insurers' drafts were to be made payable to Litigation Support, which, in turn, was to purchase the annuity from Executive Life, the final draft also corrected the original draft, which provided that the drafts were to be made payable to Executive Life Corporation. Although the final draft carried over Litigation Support's erroneous reference to the "Executive Life Corporation", rather than "Executive Life Insurance Company of New York" as provided in the January 16, 1984 order of the court, that order was incorporated in and attached to the final agreement signed in April 1984 by both insurers, Litigation Support and the infant's father, as guardian.

The April 1984 agreement specifically provided for the release of the insurers upon payment of the lump sums due thereunder and their discharge from any obligation with respect to said payments. It further stated that the "release and discharge shall be final, irrevocable and absolute, and that Litigation Support Corporation shall be the sole obligor to the Plaintiff with respect to the Payments."

On May 15, 1984, Martin, Clearwater & Bell concluded the settlement by forwarding to Litigation Support a $275,000 draft, Employers' share of the final phase of the settlement, payable to Litigation Support "pursuant to the settlement negotiations and orders of the Court in the [underlying] action, and the Agreement by and between [the insurers] Joseph Aglira and Litigation Support Corporation, outlining the steps you will take to purchase an annuity." Litigation Support acknowledged receipt of the draft, noting in its May 16, 1984 letter, "Said draft will be used to purchase an annuity per the court order and your agreement with [Litigation Support's] Mr. Sarni".

Although it had previously, in its December 21, 1983 letter, confirmed that the annuity was to be purchased from Executive Life Insurance Company of New York, Litigation Support purchased the annuity from Executive Life Insurance Company of California, now in liquidation. As a result, the infant

will, it is alleged, lose approximately 30% of the value of the annuity. There is nothing in the record to explain why Litigation Support, aware that the annuity was to be purchased from a specifically designated life insurer in New York, purchased the annuity from a California insurer.

As to each of the third-party defendants, Julien & Schlesinger pleads claims of negligence, breach of contract and fraud, seeking to recover in contribution or indemnification or both. Martin, Clearwater & Bell, arguing that as counsel for defendants in the underlying action it owed no duty to the infant plaintiff or his counsel, Julien & Schlesinger, and did not commit fraud, moved and Employers, alleging the contractual release, cross-moved to dismiss the third-party complaint pursuant to CPLR 3211. In opposition, Julien & Schlesinger argued that the settlement agreement should be invalidated on the grounds of mutual mistake or fraud, citing the fact that Martin, Clearwater & Bell corrected the original reference to "Executive Life Corporation, a California corporation", which should have read, "Executive Life Insurance Company of New York."

Without addressing the well-settled principle that an attorney for one party to litigation is not liable, as a matter of law, for the negligence of the opposing party's attorney or the effect of the release, the IAS Court denied the motions. In so ruling, it found that a statement by the attorney who handled the matter for Martin, Clearwater & Bell that it was always the parties' understanding that Executive Life Insurance Company of New York would provide the annuity somehow supports Julien & Schesinger's claim of mutual mistake or fraud. Since we find the third-party claims asserted against Martin, Clearwater & Bell and Employers to be devoid of merit, we reverse and grant both the motion and cross motion to dismiss the third-party complaint.

In the context of a legal malpractice claim, as in any other case, "[i]n determining whether a valid third-party claim for contribution exists, the critical issue is whether the third-party defendant owed a duty to the plaintiff which was breached and which contributed to or aggravated plaintiff's damages." *(Rosner v Paley,* 65 NY2d 736, 738.) An attorney does not owe a duty of care to his adversary or one with whom he is not in privity *(Matter of Podolsky v Narnoc Corp.,* 196 AD2d 593). As the complaint and third-party complaint clearly concede, Martin, Clearwater & Bell acted exclusively for its clients, defendant physicians and their insurer, Employ-

ers, in the underlying medical malpractice action. As such, it owed a duty of reasonable care only to these parties and owed no duty to the infant plaintiff or his attorneys, Julien & Schlesinger.

Nor does *Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood* (80 NY2d 377), cited by Julien & Schlesinger, support its position. The issue there was whether a law firm that, pursuant to its client's instructions, furnished an opinion letter containing false assurances to a third party, not its client, could be held accountable to that party for negligent misrepresentation. The Court held that it could, provided a showing were made "that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." *(Supra,* at 382.) Such a requirement was necessary, the Court held, "in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability." *(Supra,* at 382.) Applying the proper standard to the facts of the case, the Court held, an attorney could be liable to a third party if he were aware, as was the case in *Prudential,* that the opinion letter he prepared was to be used for commercial purposes and would be justifiably relied upon by the party to whom it was sent. The Court noted that since the law firm addressed the opinion letter directly to the third party it clearly evinced its understanding that the latter would rely on the letter *(supra,* at 385).

That is not the case here. To begin with, as the documentary evidence in this record shows, there was no misrepresentation in the April 1984 agreement. Nothing therein directs Litigation Support to purchase the annuity from Executive Life Insurance Company of California. In fact, Martin, Clearwater & Bell properly corrected the original draft to remove the phrase "a California corporation" from the description of "Executive Life Corporation." While it did not insert the words "of New York" in the corrected agreement and strike the word "Corporation" and substitute instead the words "Insurance Company", it could rely on the referenced court orders, attached to the agreement, which directed that the annuity be purchased from Executive Life Insurance Company of New York as well as Litigation Support's December 21, 1983 letter acknowledging that the annuity was to be underwritten by "Executive Life Insurance Company of New York."

Thus, unlike *Prudential (supra),* Martin, Clearwater & Bell is guilty of no misrepresentation and, in any event, never made representations upon which it believed third parties

would rely. In reviewing Litigation Support's draft agreement, Martin, Clearwater & Bell was acting solely to protect the interests of its client, Employers. Most certainly, it was, for instance, looking to make sure that its client was released from any and all liability as a result of its payment and that it would have no further responsibility with respect to the purchase and maintenance of the annuity. Similarly, it was Julien & Schlesinger's task to see that the agreement provided for the proper settlement payment and purchase of the requisite annuity. Try as it might, Julien & Schlesinger cannot shift that burden or any part of it to Martin, Clearwater & Bell.

Nor are the infant or Julien & Schlesinger able to assert a breach of contract claim against Martin, Clearwater & Bell. Such a cause of action may be maintained against an attorney "only where the attorney makes an express promise * * * to obtain a specific result and fails to do so." *(Pacesetter Communications Corp. v Solin & Breindel,* 150 AD2d 232, 236, *lv dismissed* 74 NY2d 892.) No such contract was ever entered with either the infant or Julien & Schlesinger. As a matter of undisputable documentary evidence, the April 1984 agreement does not constitute "an express promise [by Martin, Clearwater & Bell] * * * to obtain a specific result." *(Supra,* at 236.) The agreement requires Litigation Support to purchase the annuity; it requires Martin, Clearwater & Bell's client to deliver its share of the settlement funds to Litigation Support. There is no dispute that these funds were so delivered. Thus, dismissal of the third-party complaint to the extent it alleges a claim in legal malpractice and breach of contract against Martin, Clearwater & Bell should have been granted on the basis of a defense founded on documentary evidence. *(See,* CPLR 3211 [a] [1].)

Finally, the third-party complaint, insofar as it attempts to assert a cause of action in fraud or misrepresentation against Martin, Clearwater & Bell, should have been dismissed. To state such a cause of action, Julien & Schlesinger were obliged to plead a material misrepresentation of fact, made with knowledge of its falsity and the intent to deceive, justifiable reliance and damages. *(Lanzi v Brooks,* 43 NY2d 778.) As far as reliance is concerned, it is a well-settled principle that neither a party nor his attorney may justifiably rely on the legal opinion or conclusions of his or her adversary's counsel. *(Dousmanis v Joe Hornstein, Inc.,* 181 AD2d 592; *LoGalbo v Plishkin, Rubano & Baum,* 197 AD2d 675.) In *LoGalbo,* the

purchaser's attorney gave timely oral notice of his clients' exercise of an option to cancel a contract for the sale of a residence but failed to give the requisite notice in writing within the time specified. The seller was awarded summary judgment on his breach of contract claim. The clients sued the attorney, who impleaded the seller's attorney, seeking contribution and indemnification on the basis of the latter's fraudulent representation that an oral notification would suffice. The Second Department dismissed the third-party complaint, holding, "[a]n attorney simply cannot justifiably rely on the representation of his or her adversary which is inconsistent with existing law and the clear provisions of a contract." *(Supra,* at 676.)

Moreover, and most significantly, Julien & Schlesinger have failed to plead even a single misrepresentation alleged to have been made by Martin, Clearwater & Bell. The only representation shown in the record is that by Litigation Support, Julien & Schlesinger's agent, that it would purchase the appropriate annuity for the infant. "[A] party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." *(Rodas v Manitaras,* 159 AD2d 341, 343.) Moreover, there can be no claim for fraud or misrepresentation where the document alleged to constitute the alleged fraud or misrepresentation disproves the claim. *(See, Haggerty v Comstock Gold Co.,* 765 F Supp 111, 115 [SD NY]; *see also, Feinman v Schulman Berlin & Davis,* 677 F Supp 168 [SD NY]; *First Inter-County Bank v DeFilippis,* 160 AD2d 288, *lv denied* 77 NY2d 801.) By no stretch of the imagination can the April 1984 agreement be construed to contain a misrepresentation attributable to Martin, Clearwater & Bell.

Aside from its obvious lack of even arguable merit with respect to Employers, the third-party complaint should also be dismissed against that party on the basis of the release contained in the April 1984 agreement, which provided that upon tendering their drafts, the insurers "are forever released and discharged from any further obligations arising from the [medical malpractice] litigation." A clear and unambiguous release is enforceable between the parties to a contract and is effective regardless of whether one party claims to have meant something else. *(See, Galizi v Mazin,* 161 AD2d 419.)

There is no basis for Julien & Schlesinger's claim of material mistake. Employers fully performed pursuant to the April 1984 agreement and its performance was accepted by the

infant and Julien & Schlesinger, thereby triggering the release provision. Employers was not required under the agreement to purchase the annuity or oversee its purchase or insure that the infant received the proceeds therefrom. That Litigation Support, for whatever reason, failed properly to purchase the annuity does not constitute a mutual mistake. One party's misinterpretation of an agreement or misunderstanding of its terms does not void the agreement. *(Touloumis v Chalem,* 156 AD2d 230, 232.) Litigation Support's unexplained action in failing to follow the court's direction and its own proposal for the purchase of the annuity cannot be visited upon parties for whom it was not acting and, as the documentary evidence shows, had no part in the action it took. Similarly, there is no evidence of fraud by Employers with respect to the agreement.

Accordingly, the order of the Supreme Court, Bronx County (Anne Targum, J.), entered on or about March 2, 1995, which, *inter alia,* denied the motion of Martin, Clearwater & Bell and the cross motion of Employers Insurance of Wausau to dismiss the third-party complaint, should be reversed, on the law, with costs and disbursements, the motion and cross motion granted and the third-party complaint against said third-party defendants dismissed. The Clerk is directed to enter judgment in favor of third-party defendants Martin, Clearwater & Bell and Employers Insurance of Wausau, with costs.

KUPFERMAN, WILLIAMS and MAZZARELLI, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about March 2, 1995, reversed, on the law, with costs and disbursements, the motion of Martin, Clearwater & Bell and cross motion of Employers Insurance of Wausau granted, and the third-party complaint as against them dismissed.