927 So.2d 339 (2005)
Jerald P. BLOCK
v.
BERNARD, CASSISA, ELLIOTT & DAVIS, Stephen N. Elliott, Sentry Insurance Company and Keith J. Labat.
No. 2004 CA 1893.
Court of Appeal of Louisiana, First Circuit.
November 4, 2005.
*341 Matthew F. Block, Thibodaux, Counsel for Plaintiff/Appellant Jerald P. Block.
David S. Daly, M. Sean Reid, Metairie, Counsel for Defendants/Appellees Bernard, Cassisa, Elliott & Davis and Stephen N. Elliott.
Terry Christovich Gay, Kevin R. Tully, H. Carter Marshall, New Orleans, Counsel for Defendant/Appellee Sentry Insurance A Mutual Company.
Keith J. Labat, Thibodaux, In Proper Person.
Albert J. Derbes, III, Eric J. Derbes, Melanie M. Mulcahy, Metairie, Counsel for Third-Party Defendants/Appellees Keith J. Manning and Susan P. Manning.
Howard B. Kaplan, Metairie, Counsel for Defendant/Appellee Stephen N. Elliott.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
This appeal involves an action by an attorney to recover an unpaid fee owed by former clients in a personal injury action from attorneys representing an adverse party in that underlying action. The plaintiff-appellant, Jerald P. Block, seeks the reversal of the trial court's judgment sustaining a peremptory exception of no cause of action in favor of the defendants-appellees, Stephen N. Elliott and the law firm of Bernard, Cassisa, Elliott & Davis. We affirm the trial court's judgment for the following reasons.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On March 17, 1993, Keith J. Manning was seriously injured in a motor vehicle accident. In December 1993, he and his wife, Susan P. Manning, retained an attorney, Jerald P. Block, to represent them in the assertion of personal injury claims arising from the accident. Mr. Block filed suit for damages on behalf of the Mannings on January 21, 1994. The Mannings later executed a written contingent fee agreement with Mr. Block on January 31, 1997 ("effective" that date), providing for a one-third (331/3%) contingent fee, in addition to reimbursement of litigation expenses and costs.
During the course of Mr. Block's representation of the Mannings, he delegated certain aspects of the handling of the case to Keith J. Labat, an associate attorney employed by him. Mr. Labat left Mr. Block's employment in April 1997. The Mannings subsequently decided to retain Mr. Labat to represent their interests, but offered to continue to be represented by Mr. Block as co-counsel. Mr. Block declined the offer, and was notified that he had been discharged by the Mannings on November 29, 1997. He properly recorded his written contingent fee agreement *342 with the trial court's clerk of court on December 22, 1997, and also filed a petition of intervention in the Mannings' personal injury action the same day.
The Mannings' claims against the tortfeasors and their liability insurer were ultimately settled for the latter's liability coverage limits of $100,000.00, and the Mannings settled with their own underinsured motorists insurer for its applicable coverage limits of $10,000.00. The primary focus of the litigation, however, was the potential liability of Sentry Insurance A Mutual Company (Sentry), which provided underinsured motorists coverage under primary and umbrella policies issued to Mr. Manning's employer.
Sentry was represented in the underlying action by the defendant attorneys herein, Stephen N. Elliott and the firm of Bernard, Cassisa, Elliott & Davis (the defendant attorneys). Sentry eventually made an unconditional tender of $350,000.000 in December 1997 as part of a broader settlement agreement, and thereafter paid another $1,500,000.00 in compromise of the Mannings' claim against it.
On December 14, 1999, Mr. Block sent a letter by mail and facsimile telecopier to Mr. Elliott, confirming his understanding that the underlying action had been settled and that his name would be included as a payee on the settlement check. In the meantime, Mr. Labat had advised his clients to refuse to agree to the inclusion of Mr. Block as a payee on the check, and advised Mr. Elliott by letter dated December 16, 1999 that the Mannings would not agree to the proposed compromise if Mr. Block's name was included on the check. On December 20, 1999, Mr. Elliott advised Mr. Block via mail and facsimile telecopier that he and his client "have been informed by Keith Labat that the Mannings will not settle this case if your name is included on the check," and that the check would be issued payable to Mr. Labat and the Mannings. Mr. Elliott also conveyed Mr. Labat's supposed agreement to "take care of all of [Mr. Block's] costs in this matter."
Mr. Block promptly replied to Mr. Elliott's letter of December 20, 1999 later that day, via the same media. He advised Mr. Elliott that he intended "to hold you, your firm and Sentry Insurance Company [sic] liable for all of my costs, fees, etc." and that he intended "to take action necessary to nullify the settlement."[1] Finally, he emphasized that the dispute as to his fee could be resolved "by including my name on the check or draft ...."
Mr. Block also filed a petition for injunctive relief on December 20, 1999, seeking to enjoin the negotiation of the settlement check or draft or any other disposition of the total attorney fee portion of the settlement funds. The trial court denied injunctive relief, and the final release and settlement agreement between the Mannings and Sentry was signed the following day, December 21, 1999. As part of the settlement agreement, the Mannings agreed to indemnify Sentry from any further claims related to their causes of action, including claims for attorney's fees, and Mr. Labat expressly agreed to personally indemnify Sentry and the defendant attorneys for any claim made by Mr. Block for his fee and costs.
Mr. Block's intervention was tried on April 1-3, 2002. The trial court found that the Mannings discharged Mr. Block for *343 cause, and that he was entitled to $32,666.65 as his fee, with the balance of $620,666.65 being apportioned to Mr. Labat. The judgment in favor of Mr. Block was rendered against Mr. Labat, rather than the Mannings, although Mr. Labat was not a defendant in intervention, and was signed on May 6, 2002.
Mr. Block appealed the judgment on his intervention. In an unpublished opinion, this court held that the trial court erred in finding that Mr. Block was discharged for cause, and amended the amount of Mr. Block's attorney fee award by increasing it to $489,999.99, representing 75% of the total one-third amount attributable to attorney's fees. Manning v. T.H.E. Insurance Company, et al., 02-1999 (La.App. 1st Cir.9/26/03) (unpublished opinion).[2] This court further amended the judgment to reflect that the Mannings were the parties cast, rather than Mr. Labat, citing La. C.C.P. art. 2164's authority to "render any judgment which is just, legal, and proper upon the record on appeal." In doing so, we noted that all other issues and claims asserted by Mr. Block were pretermitted.[3]
On December 1, 2003, Mr. Block instituted the present action, seeking recovery of his unpaid fee of $489,999.99, together with legal interest from the date of filing of his prior intervention and all costs. Named as defendants were the defendant attorneys, Sentry, and Mr. Labat. Mr. Block alleged that by "knowingly and purposely" omitting his name from the settlement check, the named defendants "purposely and consciously ignored [his] intervention," and that they "violate[d] Louisiana law and the Rules of Professional Conduct," thereby rendering them solidarily liable to him.
In response to Mr. Block's petition, Sentry filed a combined pleading incorporating dilatory and peremptory exceptions, its answer, a cross-claim for indemnity against Mr. Labat, and a third-party demand for indemnity against the Mannings. The defendant attorneys responded with combined dilatory and peremptory exceptions, consisting of a dilatory exception of discussion *344 and a peremptory exception raising the objections of no right of action, no cause of action and peremption, and res judicata.
The hearing on the defendant attorneys' exceptions, together with other exceptions and motions, took place on April 16, 2004. The trial court ruled that Mr. Block had not stated a viable cause of action against Sentry, but granted him leave to amend his petition to do so. As to the defendant attorneys, the trial court sustained their peremptory exception on the grounds that Mr. Block had not stated, and could not properly state, a cause of action against them, and dismissed his petition against those defendants with prejudice. The other exceptions at issue were overruled or continued as moot. The trial court's judgment in that regard was signed on April 29, 2004, as were its written reasons for judgment.[4] This appeal followed.

ASSIGNMENT OF ERROR AND ISSUES PRESENTED
Mr. Block contends the trial court erred in holding that he did not state a cause of action against the defendant attorneys in his petition. He frames the issues presented for our review as follows:
1. Whether a discharged attorney has a cause of action against the tortfeasor's [sic] counsel when the name of the discharged attorney is deliberately left off a settlement draft payable to the plaintiff and new plaintiff's counsel;
2. Whether a discharged attorney may hold the tortfeasor's [sic] counsel liable for the fee owed by the plaintiff when a settlement draft is issued which deliberately omits the name of the discharged plaintiff attorney.

APPELLATE REVIEW OF JUDGMENT SUSTAINING PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION
The objection that a petition fails to state a cause of action is properly raised by the peremptory exception. La. C.C.P. art. 927(A)(4). A trial court's judgment sustaining the peremptory exception of no cause of action is subject to de novo review by an appellate court, employing the same principles applicable to the trial court's determination of the exception. Stroscher v. Stroscher, 01-2769, p. 3 (La.App. 1st Cir.2/14/03), 845 So.2d 518, 523.
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition, in terms of whether the law extends a remedy to anyone under the petition's factual allegations. Id. Generally, no evidence may be introduced to support or controvert the exception. La. C.C.P. art. 931. However, Louisiana jurisprudence recognizes an exception to this rule, whereby evidence admitted without objection may be considered by the court as enlarging the pleadings. Stroscher, 01-2769 at p. 3, 845 So.2d at 523. Here, the record reflects that evidence was received during the course of the hearing held on multiple exceptions and motions, and that no objection was made to the trial court's consideration of such evidence for purposes of determining the peremptory exception *345 of no cause of action.[5]
For purposes of determining the issues raised by a peremptory exception of no cause of action, the well-pleaded facts in the petition must be accepted as true, and the court must determine if the law affords the plaintiff a remedy under those facts. Id. Any doubts are resolved in favor of the sufficiency of the petition. Id. If two or more causes of action are based on separate and distinct operative facts, the court may sustain the exception in part, while preserving other causes of action sufficiently pleaded. Everything On Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1242 (La.1993).

DISCUSSION
In the leading case of Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, the supreme court addressed the issue of whether a party may maintain a cause of action against his adversary's attorney. Citing its prior holding in Penalber v. Blount, 550 So.2d 577 (La.1989), the court reaffirmed the following general principle of our law:
Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client. (Citation omitted.)
Montalvo, 93-2813 at pp. 3-4, 637 So.2d at 130.
The supreme court in Montalvo pointed out that despite the foregoing principle, an attorney may nevertheless be held personally liable to his client's adversary for intentional tortious conduct. The court further explained that in order to state such a cause of action, "it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney ...." Montalvo, 93-2813 at p. 4, 637 So.2d at 130. And it seems to us that the standard should be even stricter in the case of a claim by one attorney against another arising from an adversarial contest, as the "chilling effect" on the exercise of independent judgment in representation would be even more pronounced. See, e.g., Aglira v. Julien & Schlesinger, P.C., 214 A.D.2d 178, 183, 631 N.Y.S.2d 816, 819 (1995) (Noting that "[a]n attorney does not owe a duty of care to his adversary or one with whom he is not in privity," the court held that a law firm representing a plaintiff in an underlying medical malpractice action had no cause of action against the opposing defense firm in a later action by the plaintiff against his former attorneys for malpractice in acquiring a settlement annuity.)
Even if the omission of Mr. Block's name as a payee on the settlement check was deliberate, as all parties concede, that action cannot rise to the status of an intentional tort absent a legal duty owed by the defendant attorneys to avoid harm to Mr. Block, the breach of that duty being the legal cause of damages, and the requisite malicious intent on their part in the breach of the duty. We question whether the conduct at issue can form the basis of an intentional tort, as such a conclusion presupposes *346 that the defendant attorneys, rather than their client, had the power to make the ultimate decision as how the check was drawn. Further, that conclusion would have to presuppose the failure or refusal of the Mannings and Mr. Labat to recognize and pay the fee owed to Mr. Block. It would seem that the latter conduct would be the actual legal cause of any harm, rather than the mere omission of Mr. Block as a named payee, and would form the basis of contractual and statutory causes of action, rather than a delictual cause of action. At any rate, the facts alleged in Mr. Block's petition as to the defendant attorneys are plainly insufficient to meet the Montalvo standard of malicious intent; thus, they fail to state a cause of action based upon intentional tort.
Leaving aside the issue of a Montalvo-type intentional tort, the question then becomes whether Mr. Block has stated a cause of action against the defendant attorneys under any other theory of recovery. He postulates the existence of such a cause of action based upon an alleged duty imposed upon the defendant attorneys by both La. R.S. 37:218 and Rule 1.15 of the Louisiana State Bar Association's Rules of Professional Conduct.
At the time of the settlements at issue, La. R.S. 37:218 provided:
A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made.
B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.
The practical effect of this statute has been succinctly stated by one Louisiana court: "When the contract is recorded, as a practical matter, the attorney and his client must be named payees." New Orleans Public Service, Inc. v. Vanzant, 580 So.2d 533, 536 (La.App. 4th Cir.), writ denied, 584 So.2d 1168 (La.1991). It has previously been recognized that "it is the customary industry practice in the legal profession for settlement checks to be issued in the names of both the client and the attorney." Ferguson v. West Jefferson Levee District Board of Commissioners, 96-385, p. 6 (La.App. 5th Cir.11/14/96), 685 So.2d 273, 276, writ granted in part and denied in part, 96-3005 (La.2/7/97), 688 So.2d 486. We likewise take judicial notice that the prevailing litigation practice among both the insurance industry and the legal profession is to include as payees on a settlement check the names of the client, the client's present and former attorneys, and in some cases other third parties having *347 an interest in the funds.[6] La. C.E. art. 201(b)(1), (C); but see La. C.E. art. 201(E). But we cannot conclude, nor has it been shown, that this custom has acquired the force of law, despite its prevalence.
Rule 1.15 forms part of Article 16, Rules of Professional Conduct, in the articles of incorporation of the Louisiana State Bar Association (LSBA). At the time of the settlements in 1999, Rule 1.15 provided, in pertinent part:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after the termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
According to the LSBA's Ethics Advisory Service Committee, Rule 1.15 is intended to be "the `how to' of trust accounting in a nutshell," governing an "attorney's actions when there are competing parties with interest in money that is held in trust...." LSBA Ethics Advisory Service Committee, The Pitfalls of Rule 1.15(b), 48 La.B.J. 392 (2001). (Our emphasis.) The supreme court has summarized Rule 1.15(a) as "relate[d] solely to the duty of an attorney to hold property of a client or third party in a separate fund" and Rule 1.15(b) as "relate[d] to conversion." In re Wittenbrink, 03-0425, p. 5 n. 3 (La.6/27/03), 849 So.2d 18, 21 n. 3.
In a recent public opinion, the LSBA's Rules of Professional Conduct Committee *348 summarized the import of present Rule 1.15(d) (former Rule 1.15(b), cited supra):
A lawyer's obligation to safeguard funds or property runs not only to the client, but also to third parties whom the lawyer knows to have certain legally enforceable rights to the funds or property. Enforceable third-party rights which must be protected include judgments, liens or privileges, and written guarantees. The lawyer's obligation to third parties is separate and distinct from the obligation to the client and may not be disregarded at the request or direction of the client. In the case of a dispute over funds between a client and a third party making a legally enforceable claim, the lawyer may not unilaterally arbitrate the distribution but should consider seeking resolution by the court.
Louisiana State Bar Association Public Opinion 05-RPCC-004, p. 1 (4/4/05). In its commentary on the foregoing opinion, the committee explained:
Usually this issue arises as the result of the payment of a settlement or a judgment in a personal injury case. The payment is generally made in the name of both the lawyer and the client, and the funds are thus placed in the lawyer's trust account for subsequent distribution between the lawyer and the client in accord with the fee agreement. Often, however, medical or other types of bills related to services provided to the client by third parties have not been paid in full prior to the resolution of the case. The intent is generally that these third parties should also be paid out of the proceeds of the settlement or judgment, and most clients readily agree that the funds can be distributed in that fashion.
Occasionally, however, a client will balk at the proposed distribution to third parties and seek instead to receive all of the funds, less the lawyer's fees and expenses.
Id. at p. 2.
Mr. Block attempts to analogize La. R.S. 37:218 to La. R.S. 9:4752, et seq., which establish a privilege in favor of an injured party's medical providers on proceeds collected from a third party. The statutes are not fairly comparable. It is true that La. R.S. 9:4754 makes "any person who... pays over any monies subject to the privilege created herein, to any injured person, or to the attorney, heirs, or legal representatives of any injured person" liable to the health care provider whose bill is not paid, and that attorneys disbursing settlement funds are subject to such liability. See Charity Hospital of Louisiana in New Orleans v. Band, 593 So.2d 1392, 1394-95 (La.App. 4th Cir.) writ denied, 600 So.2d 645 (La.1992). But La. R.S. 9:4754 and the related statutes are quite specific as to the broad scope of the privilege and the persons upon whom liability is imposed, whereas La. R.S. 37:218, as interpreted by our supreme court, is limited in its scope. Comparison of the provisions thus supports a conclusion opposite to that advanced by Mr. Block.
Mr. Block's pursuit of greater protection than that afforded by La. R.S. 37:218 and its interpretative jurisprudence has an inherent, fatal flaw. The very reason for Mr. Block's insistence that his name be included on the settlement check was to grant him rights under the Louisiana commercial laws, La. R.S. 10:1-101, et seq., comparable to those of the other payees regarding the possession, indorsement, and negotiation of the check as a negotiable instrument.[7] But the same commercial *349 laws clearly establish that the defendant attorneys were never "holders" of the check, and thus should not be considered as having "received," "held," or "possessed" the funds represented by the check, for purposes of Rule 1.15.[8] There is no allegation or suggestion that the defendant attorneys exercised any right of ownership or possession over the settlement check or the funds it represented, indorsed the check, or held the check or any funds in trust for anyone. Rather, the allegations show that they simply handled the delivery of their client's check in their status as agents or mandataries for their client, who was paying the funds, not receiving them.[9] The defendant attorneys promptly notified Mr. Block after receiving the Mannings' demand relating to the form of the check, and also notified him of the anticipated transmission of the check. Rule 1.15 simply has no application to the defendant attorneys' situation, although it certainly is directly applicable to that of Mr. Labat.
It is evident from the record that Sentry made an informed decision to accede to the Mannings' demand to exclude Mr. Block's name as a co-payee on the settlement check, in order to obtain an enforceable written compromise agreement. See La. C.C. art. 3071. In doing so, it necessarily took the calculated risk of future liability to Mr. Block in the event the Mannings and Mr. Labat failed to honor Mr. Block's privilege for his fee. See Scott v. Kemper Insurance Company, 377 So.2d 66, 70 (La. 1979). The very fact that the present litigation is ongoing suggests that Mr. Block's concerns regarding his ability to obtain his fee from the funds held by Mr. Labat were legitimate, if not prescient.
By pursuing Sentry, Mr. Block will necessarily expose his former clients to the indemnity claim asserted by Sentry. Should Sentry be held liable for Mr. Block's fee, it may seek indemnity from either Mr. Labat, the Mannings, or both. The Mannings, of course, could have avoided this result by permitting Mr. Block to be included as a payee on the settlement checks. For whatever reason, they chose not to do so, to their potential peril. Of course, they may have recourse against Mr. Labat, but such recourse may ultimately be of little practical benefit to them should they encounter the same obstacles Mr. Block did. The end result may be that the Mannings will ultimately pay over $1,170,000.00 in attorney fees, in addition to litigation expenses, interest, and court costs, out of a total damages recovery of $1,960,000.00. Such a result, should it occur, would be a sad commentary on both our legal profession and the present mechanics of the contingent fee system, and would cry out for the formulation of a certain method of prevention of such situations in the future, protecting all clients (both plaintiffs and defendants) from unnecessary double fee payments.[10]
*350 Although we resolve the issue before us adversely to Mr. Block, we acknowledge that the language of Rule 1.15(b), on its face, might reasonably be read as lending some support to his argument. Within its broader context, however, we must conclude that the rule does not impose an affirmative duty upon the defendant attorneys to independently ensure either the inclusion of Mr. Block as a payee on the checks issued by Sentry or the separate payment of Mr. Block's then-indeterminate fee by their client. Should Sentry and the Mannings have consented to the inclusion of Mr. Block as a payee on the settlement checks? Common sense, prudence, and customary practice would certainly dictate that course of action. Should there be such an affirmative duty imposed upon insurance defense counsel simply acting as agents in transmitting settlement checks and releases, in favor of discharged opposing counsel? We choose not to make such a perilous leap over a chasm of serious doubt. We leave that policy decision to the will of the legislature, or to the sagacity of the supreme court in its rulemaking role.[11] We simply conclude that no such duty presently exists under our law, and that Mr. Block has not and cannot state a cause of action against the defendant attorneys for that reason.

DECREE
The judgment of the trial court, sustaining the peremptory exception of no cause of action and dismissing with prejudice the cause of action of the plaintiff-appellant, Jerald P. Block, against the defendants-appellees, Bernard, Cassisa, Elliott & Davis and Stephen N. Elliott, is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Jerald P. Block.
AFFIRMED.
DOWNING, J., concurs for the reasons assigned by CARTER, J.
CARTER, J., concurs with reasons.
CARTER, C.J., concurring.
I concur with the result reached in the majority opinion and join in the holding that Mr. Block has no cause of action against the defendant attorneys herein. I do not join in the discussion regarding Mr. Block's causes of action against other parties. Nor do I ascribe to the majority's views on how this situation could have been avoided, or how it can be prevented in the future, because I believe such is dicta unnecessary to the decision of this case.
NOTES
[1] In his letter to Mr. Elliott, Mr. Block cited the case of Scott v. Kemper Insurance Company, 377 So.2d 66 (La.1979), in support of his threat of recourse against the defendant attorneys. We emphasize, however, that the same case expressly held that a discharged attorney "has no right to interfere with or nullify the settlement which his former client has made," despite La. R.S. 37:218's language to the contrary. Id. at 70.
[2] The judgment on Mr. Block's intervention against his former clients is now final and definitive. However, one of the issues raised in this appeal and addressed at length by the opposing parties is whether Sentry and the defendant attorneys have the right to challenge the apportionment and amount of the fee awarded to Mr. Block, as they were not parties cast in judgment on Mr. Block's intervention in the underlying action. We address this point because of its potential relevance to Mr. Block's cause of action against the defendant attorneys asserted herein, which is expressly predicated upon La. R.S. 37:218's provisions requiring a written, recorded fee contract. For example, could the apportionment and amount of the fee attributable to work performed prior to the "effective" date of the written contingent fee agreement (January 31, 1997) be challenged on the grounds that it must be based upon quantum meruit, rather than a contingent fee? The question becomes even more compelling when it is considered that Mr. Block's own written contract specifically provided that "if Block is discharged ... before any settlement is offered or any award is obtained, Block ... shall be entitled to reasonable compensation for all work done on the case." (Our emphasis.) On the other hand, since La. R.S. 37:218 creates a privilege, it may be that the amount of the privilege may not be collaterally attacked by Sentry or the defendant attorneys, given the finality of the judgment against the Mannings. Because of our ultimate ruling herein, however, we need not resolve these issues.
[3] In the prior appeal, this court opined in a footnote that the defendant attorney herein, Stephen N. Elliott, was "not a totally unbiased witness in this matter," and intimated that Mr. Block might have "rights" against Sentry and "others arising from or related to the purposeful or accidental omission of Block's name from the settlement drafts." Manning, 02-1999 at p. 13, n. 10. (Our emphasis.)
[4] On June 4, 2004, Mr. Block filed a motion to certify the judgment at issue as final for purposes of appeal pursuant to La. C.C.P. art. 1915(B). The trial court granted that motion on August 3, 2004. However, as the judgment dismissed the defendant attorneys from the litigation, certification of the judgment as final under La. C.C.P. art. 1915(B) was unnecessary. La. C.C.P. art. 1915(A)(1); La. C.C.P. art. 1911. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, pp. 10-11 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 721.
[5] In its oral reasons for judgment on the hearing date, the trial court stated that its ruling on the peremptory exceptions of no cause of action was "[b]ased upon the arguments and the evidence that's been presented."
[6] Even a cursory review of the jurisprudence of other jurisdictions will reveal the common acceptance of the practice of including a lienholder with interest in a settlement's proceeds as a co-payee on a settlement check. See, e.g., Mercado v. Allstate Insurance Company, 340 F.3d 824, 827-28 (9th Cir.2003); B-Mall Company v. Williamson, 977 S.W.2d 74 (Mo. App. W.D.1998). The latter case is interesting in that it involved the issue of whether the defendants in the original action breached a settlement agreement with the plaintiffs in the original action by "gratuitously" including the plaintiffs' former attorney as a co-payee on the settlement check, over their objection. The court resolved the issue in favor of the original defendants. It should be noted, however, that the original plaintiffs had already signed the release, and that there was prior Missouri jurisprudence holding that the inclusion of the former attorney's name did not constitute a contractual breach, since it was a proper method for the original defendants to protect themselves and constituted a sufficient tender under Missouri law. Id., 977 S.W.2d at 79.
[7] If a negotiable instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. La. R.S. 10:3-110(d).
[8] To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. C.C. art. 3424. (An attorney receiving funds owed to his client "possesses" those funds only on behalf of his client.) "Holder," with respect to a negotiable instrument payable to an identified person, means the identified person in possession. La. R.S. 10:1-201(20). If an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. La. R.S. 10:3-201(b).
[9] See La. C.C. arts. 3421, 3429, and 3431. See also La. R.S. 10:3-306.
[10] It is possible that La. R.S. 37:218 might be amended to codify the customary practice of including the name of a discharged attorney with a recorded fee contract as an additional payee on any settlement check or draft, except for good cause or in those cases where an alternate method of protecting the privilege, such as a concursus action, is available. Such a statutory requirement would remove any choice in the matter from the parties. Thereafter, parties to compromise negotiations would be charged with actual or constructive knowledge of that legal requirement, and a compromise would not fail because one party refuses to execute final releases due to the inclusion of a discharged former attorney as a payee on a settlement check or draft.
[11] See LSBA Ethics Advisory Service Committee, 48 La.B.J. at 394 ("Until the Supreme Court provides definitive guidance, lawyers should protect themselves by carefully segregating funds which a client owes to a third party judgment or lien creditor, ... until such time as the nature and extent of the obligation can be resolved.")